IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–00944–KMT

NICHOLAS BUDNELLA,

  Plaintiff,

v.

USAA GENERAL IDEMNITY COMPANY,

  Defendant.

---

## ORDER

---

  Before the court are two motions: (1) "Plaintiff's Verified Motion for Summary Judgment and/or for Determination of Law," together with a brief in support of Plaintiff's motion; and (2) "Defendant USAA General Indemnity Company's Cross Motion for Summary Judgment." [("Plaintiff's Motion"), Doc. No. 22; ("Plaintiff's Brief"), Doc. No. 23; ("Defendant's Motion"), Doc. No. 24.] Both sides have responded to one another's motions. [("Plaintiff's Response"), Doc. No. 25; ("Defendant's Response"), Doc. No. 26.)

## BACKGROUND

  On June 9, 2017, Plaintiff Nicholas Budnella, while acting in the course and scope of his employment with Cooling Cubed, LLC, and while operating a vehicle owned by Cooling Cubed, LLC, was involved in an automobile accident with a third party in Colorado Springs, Colorado. [Joint Statement of Undisputed Facts in Support of Cross-Motions for Summary Judgment ("UF"), Doc. No. 21 at ¶¶ 1-2.] The accident came about when the third-party driver "crashed

into the vehicle being driven by Plaintiff."[1]  [("Complaint"), Doc. No. 5 at ¶ 6.][2]  Subsequent to

the collision, Plaintiff filed a claim for workers' compensation insurance with Cooling Cubed,

LLC's insurer, Pinnacol Assurance, and received worker's compensation benefits.  [UF ¶ 3.]

Defendant USAA General Indemnity Company ["USAA GIC"] provided personal

automobile insurance coverage to Plaintiff under Policy No. 03907 82 79G 7101 5 ["the

Policy"], which was in effect on the date of the accident.  [UF ¶ 5.]  Approximately one year

after the accident, and after receiving benefits from worker's compensation,[3] Plaintiff made a

claim against USAA GIC for benefits pursuant to the Medical Payments portion of his personal

automobile policy.  [UF ¶ 7.]   The insurer thereafter denied the claim, citing Exclusion No. 4 of

the Policy, which reads: "We do not provide benefits under this Part for any covered person for

[Bodily Injury] . . . [o]ccurring during the course of employment if workers' compensation

benefits are required or available."  [("Policy"), Doc. No. 24-1 at 24; UF ¶¶ 5, 8.]

Plaintiff challenges the denial of benefits, arguing that Exclusion No. 4 is impermissibly

ambiguous.  [Pl.'s Mot. 5; Pl.'s Brief 5.]  Plaintiff is adamant that Exclusion No. 4 violates

Colorado's Medical Payments statute, Colo. Rev. Stat. § 10-4-635(2)(a), as well as Colorado

public policy, and he contends that the exclusion should be stricken from the Policy.  [Pl.'s Brief

5-7.]  Budnella also argues that the denial of coverage by USAA GIC constitutes bad faith.

---

[1] Several court filings have referenced litigation pending between Plaintiff and Joshua Wonders, the driver of the other vehicle involved in the crash.  [*See e.g.* Doc. No. 11, Ex. 6.]  That third party's fault, or lack of fault, in the causation of injury to Plaintiff is not specifically addressed by the parties here, and has no relevance to the issues to be decided by the court.

[2] Paragraph 6 of the Complaint is generally denied by Defendant.  [("Answer"), Doc. No. 6 at ¶ 2.]  However, the fact that a third party was involved in the accident does not appear to be disputed.

[3] Medical providers had been compensated under the workers' compensation regulations.

[Compl. ¶¶ 18-20.]  USAA GIC counters that any interpretive ambiguity which could be attributed to the terms 'required' or 'available' in Exclusion No. 4 is immaterial here, because, in fact, the workers' compensation benefits were not only "available," they were actually fully paid. [Def.'s Mot. 6.]  Defendant further contends that the Medical Payments statute works in conjunction with Colorado's other no-fault insurance scheme, Workers' Compensation, and that Exclusion No. 4 reflects that legislative intent.  [*Id.* at 9-10.]  USAA GIC argues that the Medical Payments statute does not prohibit policy exclusions generally, nor does Exclusion No. 4 itself violate public policy.  [*Id.* at 11-14.]

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Through their cross motions for summary judgment, both parties agree the issues ripe for court resolution may be decided here as a matter of law.  [Pl.'s Mot. 1; Defs.' Mot. 2.]

## ANALYSIS

### I.      *First Cause of Action; Breach of Contract.*

The Policy at issue includes a Medical Payments provision ["Part B"], which is separate from the Policy's provisions concerning Liability Coverage ["Part A"], Uninsured Motorists Coverage ["Part C"], and Physical Damage Coverage ["Part D"].  [Policy 21-38; *see* UF ¶ 5.] Parts A and C provide coverage on the basis of fault, to wit: a determination of who caused, and therefore is responsible for, damages incurred during the accident.  [*See* Policy 21-24, 28-31.] Benefits pursuant to Parts A and C are dependent, in most cases, on third-party involvement, as either a tortfeasor[4] who is responsible for causing the accident/damages and who may or may not have his own insurance (implicating Part C), or as a victim of the insured if the insured was at fault for causing the accident/damages (Part A).  [*Id.*]

Part B, on the other hand, provides "no-fault" insurance coverage, which is designed to provide payment for treatment of bodily injury incurred by the policyholder as a result of an automobile accident, regardless of who was at fault or the ownership of the automobile(s) involved.  [*Id.* at 24-28.]  The provision includes, *inter alia*, payment for immediate trauma care rendered by emergency medical providers.  [*Id.*]  Part B is the only provision at issue in this case.

---

[4] For purposes of this case, the court loosely defines "tortfeasor" as a person who causes injury or damage to another.

Under the terms of the Policy, USAA GIC agreed to pay "the medical payment fee for medically necessary and appropriate medical services," which were "sustained by a covered person in an auto accident and incurred for services rendered within one year from the date of the auto accident," subject to twelve specific exclusions where Medical Payments coverage would not be provided under the Policy.  [Policy 26-28.]  The Part B exclusions are:

EXCLUSIONS

We do not provide benefits under this Part for any covered person for [Bodily Injury]:

1**.** Sustained while occupying any vehicle that is not your covered auto unless that vehicle is:
    a. A four - or six - wheel land motor vehicle designed for use on public roads;
    b. A moving van for personal use;
    c. A miscellaneous vehicle; or
    d. A vehicle used in the business of farming or ranching.

2. Sustained while occupying your covered auto when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:
    a. A share-the-expense car pool; or
    b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while occupying any vehicle located for use as a residence.

**4. Occurring during the course of employment if workers' compensation benefits are required or available.**

5. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by you.

6. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by any family member. This exclusion (6.) does not apply to you.

7. Sustained while occupying a vehicle without expressed or implied permission.

8. Sustained while occupying a vehicle when it is being used in the business or

occupation of a covered person. This exclusion (8.) does not apply to BI
sustained while occupying:
    a. A private passenger auto;
    b. A pickup;
    c. A van; or
    d. A trailer used with these vehicles.

9. Caused by or as a consequence of:
    a. War;
    b. Insurrection;
    c. Revolution;
    d. Nuclear reaction; or
    e. Radioactive contamination.

10. Sustained while occupying your covered auto while it is rented or
    leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any driving contest or
    challenge.

12. Sustained as a result of a covered Person's exposure to:
    a. Fungi;
    b. Wet or dry rot; or
    c. Bacteria.

[Policy 27-28 (emphasis added); UF ¶ 6.]

### A.    *Statutory Interaction Between Medical Payments Insurance and Workers Compensation Insurance.*

The Workers' Compensation Act, Colo. Rev. Stat. §§ 8–40–101 *et seq.*, establishes

benefits available to workers injured in the course and scope of employment, and sets forth the

procedures for obtaining those benefits.  Section 8-42-101(1)(a), provides that:

Every employer, regardless of said employer's method of insurance, shall furnish
such medical, surgical, dental, nursing, and hospital treatment, medical, hospital,
and surgical supplies, crutches, and apparatus as may reasonably be needed at the
time of the injury or occupational disease and thereafter during the disability to cure
and relieve the employee from the effects of the injury.

Colo. Rev. Stat. § 8-42-101(1)(a).  The workers' compensation scheme also provides that:

> The director shall establish a schedule fixing the fees for which all surgical, hospital, dental, nursing, vocational rehabilitation, and medical services, whether related to treatment or not, pertaining to injured employees under this section shall be compensated. It is unlawful, void, and unenforceable as a debt for any physician, chiropractor, hospital, person, expert witness, reviewer, evaluator, or institution to contract with, bill, or charge any party for services, rendered in connection with injuries coming within the purview of this article or an applicable fee schedule, which are or may be in excess of said fee schedule unless such charges are approved by the director.

*Id.* at § 8-42-11(3)(a)(I); *see Rundle v. Frontier-Kemper Constructors, Inc.*, 170 F. Supp. 2d 1075, 1077–78 (D. Colo. 2001) (The purpose of the Workers' Compensation Act is "to provide a remedy in areas where remedies do not exist at common law."); *Chartier v. Winslow Crane Serv. Co.,* 350 P.2d 1044, 1056 (1960).  As explained by the *Rundle* court:

> The statute provides an employee injured in the course and scope of his employment with medical treatment and compensation for the temporary and/or permanent loss of income resulting from the employee's disability. The statutory scheme requires an employer, by insurance or otherwise, to provide for the benefits assured to his employees.

*Rundle*, 170 F. Supp. 2d at 1078 (citation omitted); *see also Elliot v. Turner Const. Co.*, 381 F.3d 995, 1001 (10th Cir. 2004) ("The primary purpose of the Colorado workers' compensation act 'is to provide a remedy for job-related injuries, without regard to fault.'"); *accord Finlay v. Storage Tech. Corp.,* 764 P.2d 62, 63 (Colo. 1988).

The Colorado Medical Payments statute is another no-fault statutory provision, which aims to ensure payment for medical treatment rendered as part of immediate trauma care to individuals involved in traffic accidents.  Colo. Rev. Stat. § 10-4-635(2)(a).  The primary goals of the Medical Payments statute are to provide: "(1) coverage for trauma care; (2) protection of accident victims who lose employer-provided health insurance; [] (3) keeping insurance premiums low . . . (4) 'heightened responsibility' to protect the insured's interests '[b]ecause of

both the disparity of bargaining power between insurer and insured and the fact that materially

different coverage cannot be readily obtained elsewhere[;]' and (5) freedom of contract."

*Countryman v. Farmers Ins. Exch.*, 545 F. App'x 762, 765–66 (10th Cir. 2013) (interpreting

Colorado law) (citations omitted.)

The drafters of the Medical Payments statute obviously recognized that there may be

overlap between the Medical Payments provisions, workers' compensation, and the collateral

source statutes, stating that:

> Nothing in this subsection (3) shall be construed to: (I) Modify the requirements
> of section 13-21-111.6, C.R.S., [collateral source statute] or any requirements
> under the "Workers' Compensation Act of Colorado", articles 40 to 47 of title 8,
> C.R.S.

Colo. Rev. Stat. § 10-4-635(3)(b).

Medical Payments insurance is generally intended to finance immediate payments to

medical responders, who are providing care to persons suffering automobile accident-related

trauma and injury, without regard to fault.  Colo. Rev. Stat., § 10-4-635(2)(a); *see Allen v. United*

*Servs. Auto. Assoc.*, 907 F.3d 1230, 1237 (10th Cir. 2018) ("The [Medical Payments] statute []

sets up an order of priority for payments, so that 'licensed ambulances or air ambulances that

provide trauma care at the scene of or immediately after' a car accident receive payment from the

medical coverage first; trauma physicians who provide trauma care to the insured receive

payments next; trauma centers receive payments after the physicians; and other healthcare

providers obtain payment from the policy's remaining balance.'") (citing Colo. Rev. Stat. § 10-4-

635(2)(b)(I)-(IV)).  However, when read in conjunction with the Workers' Compensation

statutes, if that injury occurs while the person is at work, "workers' compensation insurance is

primary, and the insured's personal coverage may never be implicated."  WEST'S 8A COLO.

PRAC., PERSONAL INJURY TORTS & INS. § 58:2 *Coordination of Benefits & Overlapping Coverages* (3d ed.).

Exclusion No. 4 of the Policy dovetails with this Colorado statutory plan, by reinforcing that private Medical Payments insurance is excluded, or inapplicable, if an individual's medical providers are going to be paid under the workers' compensation insurance of his or her employer. The Colorado Medical Payments statute, itself, bars interference with the Workers' Compensation no-fault scheme. Therefore, Exclusion No. 4 actually furthers the legislative goals of ensuring that immediate medical care will be provided by guaranteeing payment, while also ensuring adherence to the limitations on form and amounts of payment prescribed for Workers' Compensation covered injuries to keep costs lower. Colo. Rev. Stat. § 8-41-101(3)(a)(I).

The court finds that Exclusion No. 4 of the Policy complies with the statutory scheme set forth by the Colorado legislature for no-fault medical payment to medical providers rendering trauma or other medical care for bodily injury sustained in an automobile accident by an employee while in the course and scope of his employment.

### B.    Plaintiff's Reasonable Expectations/Ambiguity of Policy Language.

Insurance policyholders in Colorado are entitled to have their reasonable expectations met. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1048 (Colo. 2011); *Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 497 (10th Cir. 1994) ("If the policy is not ambiguous, it is to be applied according to the plain and ordinary meaning of its terms, the meaning of which are to be determined in light of the reasonable expectation of an ordinary policyholder."). The doctrine of reasonable expectations "obligates insurers to clearly and

adequately convey coverage-limiting provisions to insureds." *Bailey*, 255 P.3d at 1048.  The goal is to determine "what the ordinary reader and purchaser would have understood insurance provisions to mean had they been read." *Id.* at 1051 (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo. 1986)) (internal quotation marks and alterations omitted).  The doctrine applies where technical readings could conflict with the way an ordinary or reasonable person would read the policy. *Id.*; *see Reg'l Bank of Colo.*, 35 F.3d at 497 (invoking the reasonable expectations doctrine to set aside a technical interpretation that was contrary to a reasonable person's reading).

"In order for reasonable expectations to prevail over exclusionary policy language, an insured must demonstrate through extrinsic evidence that its expectations of coverage are based on specific facts which make these expectations reasonable." *Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1234 (10th Cir. 2018) (quoting *Bailey*, 255 P.3d at 1054) (internal quotation marks and alterations omitted).  "These specific facts must show that, through procedural or substantive deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer." *Id.* (quoting *Bailey*, 255 P.3d at 1054).

In this case, Medical Payments coverage was specifically excluded from the Policy in a number of situations, including where the insured was involved in an automobile accident while working, if workers' compensation benefits were either "required or available."  [Policy 27.] Plaintiff claims that the exclusionary language of Exclusion No. 4 is ambiguous, and thus, confusing to a reasonable insured attempting to understand the extent of his coverage.  [Pl.'s Mot. 5 ¶ 9.]  He argues that whether an individual is an employee, as well as whether workers'

compensation coverage is "required" or "available," could be open to debate in any given case, even if an employee was proven to be acting in the course and scope of employment when the accident occurred.  [*Id.*]

That a term in an insurance policy might require fact specific determinations does not, alone, make the term ambiguous.  *See Mountain States Mut. Cas. Co. v. Roinestad*, 296 P.3d 1020, 1024 (Colo. 2013) ("When interpreting an insurance contract, we first give effect to the plain meaning of its terms, and we only find ambiguity where a term is reasonably susceptible to more than one meaning.") (internal citation omitted).  Here, it is undisputed that Plaintiff was working in the course and scope of his employment, and that he was occupying/operating a company-owned vehicle.  [UF ¶ 2.]  There is no ambiguity regarding Plaintiff's employment status at the time of the accident.

The term "available" is susceptible to ordinary definition.[5]  "Available" means "present or ready for immediate use; possible to get; obtainable."  *Available*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/available (last visited Dec. 28, 2020).  Again, there is no dispute that Cooling Cubed, LLC had purchased workers' compensation insurance, and that the benefits thereof were present and ready for Plaintiff's immediate use.  [*See* UF ¶ 3.]  In fact, Plaintiff did *avail* himself of the insurance benefits, and his treating medical providers were paid pursuant to that insurance and subject to the workers'

---

[5] Because the terms "required or available" appear in the disjunctive, the court need not address the meaning of the term "required" in the context of this case.  Whether Cooling Cubed, LLC was actually required to purchase workers' compensation insurance is irrelevant, since, required or not, Cooling Cubed, LLC had purchased the insurance and it was available to Plaintiff.

compensation rules and regulations.  There is nothing technical or confusing about the wording of Exclusion No. 4 in the Policy, in light of the facts underlying the present controversy.

Courts should refrain from deciding issues not necessary to resolve the case and controversy before it.  *Loc. No. 8-6, Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Missouri*, 361 U.S. 363, 367 (1960) (A court's duty is to decide actual controversies "and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."); *see also I.N.S. v. Chadha*, 462 U.S. 919, 958 n.22 (1983) (Federal courts "do not enjoy a roving mandate to correct" all legal anomalies, but instead, are limited by Article III to hearing live "cases and controversies."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 125 (1983); *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991). The court declines to address potential ambiguities with respect to the meaning of the terms "required" or "available," as they might occur in hypothetical situations not present under the facts of this case.

The court finds the plain language of the Policy clearly and adequately conveyed to Plaintiff and any other reasonable insured that the Part B Medical Payments would not be payable if the insured was involved in an automobile accident during the course and scope of his employment after he actually received workers compensation benefits, as was the case here. Under a fair and reasonable reading of Exclusion No. 4, a reasonable policyholder could not have expected that he would be entitled to money from the insurer to fund medical services performed by others who had already been paid by worker's compensation insurance.

### C.    Public Policy.

The Colorado Supreme Court has held that "[p]ublic policy, with respect to the administration of the law, is that rule of law which declares that no one can lawfully do that which tends to injure the public, or is detrimental to the public good."  *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108–09 (Colo. 1992) (quoting *Russell v. Courier Printing & Publ'g Co.*, 95 P. 936, 938 (Colo. 1908)).  In this context, it simply does not matter "that the parties entered into the agreement in good faith, or that improper means were not contemplated to bring about the result intended by the parties."  *Id.* (quoting *Russell*, 95 P. at 939).  "Rather,  the critical consideration was that the contract contemplated a result that was dependent 'entirely upon a contingency of such a character that it offered a temptation to resort to improper means to bring it about' and that '[f]or this reason the tendency of the contract under consideration was evil, without reference to the question of whether fraud was intended by the parties or employed in its execution.'"  *Id.* at 109 (quoting *Russell*, 95 P. at 939).  It is "axiomatic that a contractual condition . . . should also be deemed unenforceable when violative of public policy."  *Id.*

Whether a contract provision violates public policy is determined based on the particular facts of the case.  *Bailey*, 255 P.3d at 1045 (citing *Russell*, 95 P. at 938).  Colorado courts have looked to various sources to discern public policy, including statutory law, legislative intent, and common law.  *See Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015) (collecting cases); *see e.g. Bailey*, 255 P.3d at 1045 (looking to insurance statutes to determine whether insurance provision violates public policy); *Pierce v. St. Vrain Valley Sch. Dist. RE–1J*, 981 P.2d 600, 604 (Colo. 1999) (looking for "legislative direction" to determine public policy); *Salzman v.*

*Bachrach*, 996 P.2d 1263, 1267–68 (Colo. 2000) (collecting cases from other jurisdictions and noting that public policy can change over time.)

### 1.   *Policy Exclusions/Colo. Rev. Stat. § 10-4-635(2)(a).*

The parties do not disagree that, while insurance companies must offer no-fault Medical Payments insurance coverage of at least $5,000.00 in any automobile liability insurance policy, an insured is free to decline or reject the offer.  Section 10-4-635(1)(a) of the Colorado Revised Statutes provides that:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided in the policy or in a supplemental policy for medical payments with benefits of five thousand dollars for bodily injury, sickness, or disease resulting from the ownership, maintenance, or use of the motor vehicle.

Colo. Rev. Stat. § 10-4-635(1)(a).  Subsection (1)(b) states that "[a] policy may be issued without medical payments coverage only if the named insured rejects medical payments coverage in writing or in the same medium in which the application for the policy was taken." Colo. Rev. Stat. § 10-4-635(1)(b).  The coverage itself is <u>not</u> mandated, as argued by Plaintiff.

The Medical Payments statutes provide:

> (2)(a) *If* a policy contains medical payments coverage, medical payments benefits shall be paid *to persons providing* medically necessary and accident-related trauma care or medical care. Except as provided in paragraphs (b), (c), and (d) of this subsection (2), payments of claims for medical payments coverage shall be made in accordance with section 10-4-642.[6]

---

[6] Section 10-4-642(1) sets forth procedures to facilitate "reasonable standards be imposed for the timely payment of claims."  The statute addresses forms for claims and priorities for payments.

Colo. Rev. Stat. § 10-4-635(2)(a) (emphasis added).  Here, it is undisputed that Plaintiff chose to

purchase and pay premiums for Medical Payments coverage.  The coverage was for "the medical

payment fee for medically necessary and appropriate medical services," which were "sustained

by a covered person in an auto accident and incurred for services rendered within one year from

the date of the auto accident," subject to the twelve delineated specific exclusions.  [Policy 26-

28.]  USAA GIC argues that, if any of the exclusions applied in a given set of circumstances, the

Policy did not "contain medical payments coverage" pursuant to Colo. Rev. Stat. § 10-4-635(2).

[Def.'s Mot. 8-11.; *see* Policy 27.]

        Plaintiff claims there is no limiting language in the Medical Payments statute that would

allow for the workers' compensation exclusion.  [Pl.'s Brief 4 ¶ 5.]  In other words, Plaintiff

argues that the absence of permission for exclusions in the Medical Payments statute equates to a

prohibition against the same.  Under Plaintiff's theory, all twelve of the exclusions in Part B of

the Policy would, therefore, be null and void.  This is not the law, as the court understands it, and

Plaintiff has provided little legal support for this argument, other than citations to cases involving

the fault-based uninsured or under-insured motorists' ["UM/UIM"] coverage, which is not at

issue here.

        Generally speaking, "[i]n the absence of statutory inhibition, an insurer may impose any

terms and conditions [in an insurance agreement] consistent with public policy which it may see

fit."  *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990) (citation omitted).

The statute says nothing about situational limitations on coverage, nor does it purport to restrict

insurers from imposing such things as time limits on medical-payments coverage.  *See Allen v.*

*United Servs. Auto. Ass'n*, 907 F.3d 1230, 1237-38 (10th Cir. 2018)  If a bar to <u>any</u> policy

exclusions in a Medical Payment insurance contract was the result desired by the Colorado legislature, the statute could have said so.  The Tenth Circuit has held that "under Colorado law, we are not at liberty to "supply the missing [statutory] language" that a party believes should have been included in a statute, but "must respect the legislature's choice of language."  *Id.* at 1237 (citing *Turbyne v. People*, 151 P.3d 563, 568 (Colo. 2007)).

Plaintiff also argues that any exclusions in the Policy with respect to Medical Payments benefits are void *ab initio*, because such exclusions attempt to limit or undermine mandatory coverage.  [Pl.'s Resp. 1.]  Plaintiff offers no law in support of such an extreme reading of the Medical Payments statute, which as noted above, encourages inclusion of Medical Payments coverage in the amount of at least $5,000.00 by making the insurance company's offer of coverage mandatory, but does not mandate that policyholders accept the offer or maintain the coverage.  The law is, in fact, contrary to Plaintiff's assertion.  *Cruz v. Farmers Ins. Exch.*, 12 P.3d 307, 312 (Colo. App. 2000) ("[A] policy exclusion is not void simply because it narrows the circumstances under which coverage applies."); *see Allen,* 907 F.3d at 1237 ("[N]othing in the plain text of the MedPay statute prohibits insurance companies from including a time limit on medical-payments coverage.")  Other jurisdictions have concluded the same.  *See e.g., Starrett v. Okla. Farmers Union Mut. Ins. Co.*, 849 P.2d 397, 400 n.1 (Okla. 1993) (upholding the exclusion to Medical Payments coverage in the policy when insured had been covered by workers' compensation and noting that it "finds support in the majority of jurisdictions" and citing to sixteen cases); *Hanover Ins. Co. v. Ramsey*, 539 N.E.2d 537, 537-38 (Mass. 1989) (concluding that MedPay benefits were properly excluded under the contract where the insured "is entitled to payment or benefits under the provisions of the Massachusetts Workers' Compensation Act");

*Bailey v. Interinsurance Exch.*, 49 Cal. App. 3d 399, 401-02 (Cal. 1975) (upholding exclusion of

medical payments coverage in similar circumstances, even though the plaintiff did not actually

avail himself of workers' compensation benefits); *Sunnyhill S., Inc. v. Aetna Cas. & Sur. Co.*,

289 So. 2d 772, 774 (Fla. App. 1974) (utilizing similar language).

      The court finds that Colorado's Medical Payments statute does not prohibit clearly

worded coverage exclusions within the context of Medical Payments insurance coverage, so long

as the exclusion does not otherwise violate public policy.  The legislature has specifically

addressed the intertwined relationship between Medical Payments insurance and Workers'

Compensation insurance and their potential to overlap under certain conditions in the no-fault

legislative scheme to ensure available funds to pay providers for bodily injury medical treatment

associated with automobile accidents.  Exclusion No. 4, therefore, does not violate public policy

on these grounds.

### 2.      *Collateral Source Doctrine.*

Colo. Rev. Stat. § 13-21-111.6 provides:

> In any action by any person or his legal representative to recover damages *for a* <u>*tort*</u>
> resulting in death or injury to person or property, the court, after the finder of fact
> has returned its verdict stating the amount of damages to be awarded, shall reduce
> the amount of the verdict by the amount by which such person, his estate, or his
> personal representative has been or will be wholly or partially indemnified or
> compensated for his loss by any other person, corporation, insurance company, or
> fund in relation to the injury, damage, or death sustained; **except that** the verdict
> shall not be reduced by the amount by which such person, his estate, or his personal
> representative has been or will be wholly or partially indemnified or compensated
> by a benefit paid as a result of a contract entered into and paid for by or on behalf
> of such person. The court shall enter judgment on such reduced amount.

*Id*. (emphasis added.).  Colorado's common law collateral source exemption prohibits "trial

courts from reducing a plaintiff's verdict [against a tortfeasor] by the amount of indemnification

or compensation that the plaintiff has received, or will receive in the future, from 'a benefit paid as a result of a contract entered into and paid for by or on behalf of' the plaintiff."  *Wal-Mart Stores, Inc. v. Crossgrove*, 276 P.3d 562, 566 (Colo. 2012) (quoting Colo. Rev. Stat. § 13–21–111.6).

The exemption to normal collateral source verdict reduction, by its own terms, applies only to cases where the injured person is seeking to recover damages from the tortfeasor as a result of injuries caused by commission of the tort.  "The pivotal distinction between a contract and tort obligation is the source of the respective parties' duties."  *Micale v. Bank One N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1220 (D. Colo. 2005) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1261 (Colo.2000)).  Plaintiff, here, has sued for breach of contract.  [Compl. ¶ 13 ("Plaintiff's (sic) brings this breach of contract cause of action to claim the Medical Payments Benefits owed him under the insurance contract.").]

The collateral source exemption exists to prevent a tortfeasor from benefitting, in the form of reduced liability, from compensation in the form of money or services that the victim may receive from a third-party source which the victim had the foresight to procure for himself. *See Quinones v. Pa. Gen. Ins. Co.*, 804 F.2d 1167, 1171 (10th Cir. 1986). ("The rule evolved around the commonsense notion that a tortfeasor ought not be excused because the victim was compensated by another source, often by insurance."); *Lawhon v. United States*, No. 18-CV-00818-NRN, 2019 WL 4126595, at *7–8 (D. Colo. Aug. 30, 2019) (discussing the policy rationales underpinning the rule); *see also Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1074 (Colo. 1992) ("To the extent that either party received a windfall, it was considered more

just that the benefit be realized by the plaintiff in the form of double recovery rather than by the tortfeasor in the form of reduced liability.").

Plaintiff is not shy about admitting that he is asking for double recovery for medical treatment he received attendant to injuries sustained in the June 9, 2017 automobile accident. Providers of medical treatment to Plaintiff have all been paid through the workers' compensation proceedings.  Relying on law emanating from fault-based UM/UIM cases, Plaintiff argues that, in light of the collateral source rule and its express exemption in Colorado, public policy requires that Exclusion No. 4 of the Policy be stricken, and that he be paid benefits under his Medical Payments insurance, notwithstanding the windfall results.

What Plaintiff fails to acknowledge, however, is that double recovery is heartily disapproved generally, and is only permitted in limited circumstances to an injured plaintiff, namely where an individual who was hurt by the wrongdoing of another "should be made whole by the tortfeasor, not by a combination of compensation from the tortfeasor and collateral sources" procured by the victim.  *Lawhon*, 2019 WL 4126595, at *7 (quoting *Acuar v. Letourneau*, 531 S.E.2d 316, 323 (Va. 2000)); *accord Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083-84 (Colo. 2010) ("The wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation.").

While these principles are well-established in the context of tort liability, that is not what is presented in this case.  USAA GIC was not a participant in the automobile accident involving Budnella.  Nor did the insurer cause bodily injury to its insured.  Defendant is not at fault for Plaintiff's bodily injury damages, and thus, is not a tortfeasor in these circumstances.

Further, this case does not arise in the unique UM/UIM context, where an individual's own insurance company essentially steps into the guilty shoes of a tortfeasor, because of the tortfeasor's lack of adequate and available insurance, so as to make the injured victim whole. This case, instead, arises in a no-fault context under Colorado statutes designed and intended to ensure that medical first responders, in the aftermath of an automobile accident or on-the-job injury, will be compensated for providing treatment for injured persons, regardless of the ultimate determination as to fault and liability. Given the different morality, purpose, and equities addressed by Colorado's at-fault liability system verses its no-fault system, applying law applicable in a fault-based liability context to the no-fault Medical Payments/Workers Compensation system is inappropriate.[7]

Plaintiff does not seek equity in this case, nor does he ask that proper apportionment of the Medical Payments benefits be made in light of a potential double recovery. Rather, Plaintiff asks that the court ignore and discard the contractual agreement made between himself and his insurer, and award him double recovery for benefits already paid on his behalf. This court finds that protection of the public is not served by creating a "windfall" for a claimant whose medical providers have been paid through the Workers' Compensation system. In fact, to the extent the windfall proposed by Plaintiff undermines the Workers' Compensation system and its regulated medical care costs, the elimination of Exclusion No. 4 would be detrimental to the public good.

Further, protection of the public is not served by ignoring clearly defined exclusions in an insurance contract which mirror and uphold the legislative balance set forth in the state statutes.

---

[7] The court finds Plaintiff's reliance on *Scholle v. Delta Air Lines, Inc.*, No. 19SC546, 2019 WL 5922201 (Colo. Nov. 12, 2019) to be misplaced for this reason.

As recognized by Plaintiff himself, public policy-based rules do not exist for the benefit of the party seeking to avoid contractual obligations.  [Pl.'s Mot. 4.]  Such rules, instead, serve only "to protect the public from contracts that are detrimental to the public good."  *Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015) (citing *Russell v. Courier Printing & Publ'g Co.*, 95 P. 936, 938 (Colo. 1908)).

On this record, then, the court concludes that Exclusion No. 4 of Part B of the Policy does not violate public policy under the collateral source doctrine.  The court finds, as a matter of law, that the Policy at issue did not "contain[] medical payments coverage" under the facts of this case, because the accident occurred during the course and scope of Plaintiff's employment, and because workers' compensation benefits were available to Plaintiff, thus causing coverage to be excluded under the terms of the Policy.  Accordingly, the court finds that summary judgment should be entered against Plaintiff, and in favor of Defendant, on the First Cause of Action in the Complaint.

## II.     Second Cause of Action; Violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.

"An insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."  *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996).  "The information available to the insurer at the time of the decision 'includ[es] the state of the law.'"  *Nguyen v. Am. Family Mut. Ins. Co.*, No. 15-cv-0639-WJM-KLM, 2015 WL 5867266, at *11 (D. Colo. Oct. 8, 2015) (quoting *Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005)).

A denial based on the unambiguous language of an insurance policy precludes a finding of unreasonable denial as a matter of law.  *Am. Family Mut. Ins. Co. v. Hansen*, 375 P.3d 115,

117 (Colo. 2015).  Here, having found that Exclusion No. 4 should not be stricken from the

Policy, USAA GIC's denial of the claim was in conformance with the policy provisions and was

proper, as a matter of law.  *See Markel Ins. Co. v. Hollandsworth*, 400 F. Supp. 3d 1155, 1160

(D. Colo. 2019) ("Given the Court's conclusion that [Plaintiff] is not entitled to coverage as a

matter of law, [Plaintiff's] [ ]claims—namely, breach of contract and statutory bad faith of

insurance contract—also fail as a matter of law."); *see also MarkWest Hydrocarbon, Inc. v.*

*Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a

bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's

only claimed damages flowed from the denial of coverage.").

> For all the reasons set forth above, the court finds that summary judgment should enter

against Plaintiff, and in favor of Defendant, on the Second Cause of Action in the Complaint, as

well.

## CONCLUSION

> Therefore, for the foregoing reasons, Defendant USAA General Indemnity Company is

entitled to summary judgment on Plaintiff's claims against it.  Accordingly, it is

> **ORDERED** that "Plaintiff's Verified Motion for Summary Judgment and/or for

Determination of Law" [Doc. No. 22] is **DENIED**.  It is further

> **ORDERED** that "Defendant USAA General Indemnity Company's Cross Motion for

Summary Judgment" [Doc. No. 24] is **GRANTED**. It is further

> **ORDERED** that judgment shall enter in favor of Defendant, and against Plaintiff, on all

claims for relief and causes of action asserted in this case.  It is further

**ORDERED** that Defendant is awarded its costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

**ORDERED** that this case is **CLOSED**.

This 27th day of January, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge